Case 2:15-mj-00850-LFR Document 11 Filed 09/09/15 Page 1 of 7



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF SEIZED ITEMS: | : | **FILED UNDER SEAL** |
| | : | MAG. NO. 15-850-02 |
| Apple Mac Pro Computer<br>Apple iPhone 6 Plus Cellular Telephone<br>Western Digital My Book for Mac External Hard Drive<br>Western Digital My Book VelociRaptor Duo External Hard Drive | : | FILED<br><br>MICHAEL ... KUNZ, Clerk<br>By _____ Dep. Clerk |

## GOVERNMENT'S MOTION FOR ORDER TO SHOW CAUSE WHY FRANCIS RAWLS SHOULD NOT BE HELD IN CONTEMPT

The United States of America, through its attorneys, United States Attorney Zane David Memeger, and Assistant United States Attorney Michelle Rotella, hereby moves this Court to issue a Rule to show cause to Francis Rawls to explain why he should not be held in contempt of this court for failing to unencrypt devices seized by law enforcement pursuant to search warrants, as ordered by this Court in 15-850-M, and to certify facts to the District Court facts constituting civil contempt pursuant to 28 U.S.C. § 636(e)(6)(B). The government further requests an Order that Francis Rawls be required to produce the devices in an unencrypted state or be held in custody until he so complies with this Court's order. In support of this Motion, the government states:

1. On August 3, 2015, pursuant to the government's application under the All Writs Act to require Francis Rawls to assist in the execution of previously executed search warrants by producing the devices in an unencrypted state, Magistrate Judge Thomas J. Rueter granted the application and issued a court order directing defendant Rawls to unencrypt the devices no later than August 14, 2015.

1

2. Thereafter, on August 12 and 13, 2015, by way of letters directed to the Court, defendant Rawls requested the Court to stay its August 14th deadline to permit him to challenge the Court's order that he be compelled to unencrypt his devices. The Court granted that request over the objection of the government, and ordered the defendant to file his response by August 27, 2015.

3. The defendant filed a Motion for Reconsideration, which the Court denied on August 27, 2015. The defendant was ordered to comply with the Court's Order to unencrypt his devices by September 4, 2015.

4. On September 4, 2015, defendant Rawls appeared at the Criminal Investigation Division of the Delaware County District Attorney's Office, as directed. He met with law enforcement agents and was taken to their forensic laboratory. The court order did not direct the defendant to provide his passwords, but instead compelled him to unencrypt the devices himself for law enforcement. As a result, agents positioned Rawls to allow him privacy to enter information so that it would not be detected by law enforcement. This process was videotaped, and was also observed by Rawls' counsel.

5. Defendant Rawls first "attempted" to unencrypt the two external hard drives named in the Court's order. After a few minutes, when he was unsuccessful, he was directed to his Apple iPhone 6 cellular telephone. After appearing to enter in a few incorrect passwords, Rawls entered the correct encryption code and unlocked the cell phone. Subsequent examination of the cell phone revealed hundreds of images of adult pornography, as well as the images of his nieces that Rawls previously identified as "inappropriate.[1]"

---

[1] The recovered images of his nieces depicted what the witnesses previously described, namely: (1) a 40-second video of his 4 year old niece, in which she is seen laying in her bed, wearing only her underwear; and (2) approximately 20 photographs of his 6 year old niece as she sat on a step above where Rawls was standing. The photos all show the child with her legs open, and although she is dressed and wearing underwear, the focus of every

6.      The defendant was then directed to the external hard drives again. Rawls again made numerous "attempts" by entering something at the prompt for the encryption codes, but spent most of his time simply staring at the computer screen. Ultimately nothing was successful. At one point in the process Rawls requested a notepad so that he could record those passwords that he claimed to have already entered. In the end he failed to unencrypt any of the other devices, claiming that he just could not remember. Rawls was then excused.

7.      As noted in the government's initial application pursuant to the All Writs Act, the hard drives contain hundreds of very graphic images and video of unequivocal child pornography – that is, prepubescent children nude and engaged in oral sex and anal sex. Many of the children were toddler age.

8.      The government submits that the defendant's memory failure as to the encryption codes for the devices that contain clear child pornography was a deliberate façade designed to feign compliance with the Court's order. Accordingly the government requests the Court to issue an Order to Show Cause why Rawls should not be held in civil contempt for failure to comply with the Court's order to unencrypt his seized devices.

9.      Contempt of court is an offense against a court of justice, or an interference with its orderly process. The power of a federal court to punish a contempt of its authority is defined by 18 U.S.C. § 401, which authorizes the imposition of a fine or imprisonment, or both, at the court's discretion, and permits the Court to conduct such inquiry as is necessary to determine whether the party's action is, in fact, contemptuous. 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its

---

photograph is the child's genitals. Whether the video and photographs qualify as child pornography is a question ultimately for a jury. What is known, however, is that Rawls did not classify them as pornographic – instead, when asked by his family, Rawls categorized them as "inappropriate." The distinction in terminology is significant to this contempt motion, as it is the government's contention that Rawls only unencrypted the cell phone because he believed the images of his nieces could not be considered "pornography" and therefore could not serve as the basis for a criminal charge.

authority, and none other, as . . . . Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."); Fed. R. Crim. P. 42. As the Supreme Court has long said, "[i]t is fundamental that the power of a court to make an order carries with it the power to enforce the order and 'the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court." Id., citing In re Debs, 158 U.S. 564, 594 (1895). Indeed, without this contempt power, "what the Constitution now fittingly calls the judicial power of the United States would be a mere mockery." Merchants' Warehouse Co. v. Reber, 269 F. 974 (3d Cir. 1921); See also United States v. United Mine Workers, 330 U.S. 258, 290 n.56 (1947).

10. Civil contempt orders are intended to be coercive or compensatory in nature, and do not require a jury trial. Rather, civil contempt is imposed by the judge upon a finding that one has failed to comply with a valid court order. See United States v. Harris, 582 F.3d 512, 514-515 (3d Cir. 2009); Shillitani v. United States, 384 U.S. 364, 370–71 (1966) ("The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, provided that the usual due process requirements are met."); International Union, UMWA v. Bagwell, 512 U.S. 821, 827 (1994)("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.").

11. In civil contempt proceedings the clear and convincing evidence standard applies and the failure to comply with the court decree need not be intentional. NLRB v. Blevins Popcorn Co., 659 F.2d 1173, 1183 (C.A.D.C. 1981) (internal citations omitted).

12. If the Court finds Francis Rawls in civil contempt, it has a number of alternative sanctions to compel compliance. See John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 554 (3d Cir. 2003) ("District courts hearing civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve full remedial relief). Among the permissible options are imprisonment, fine, and other penalties designed to coerce the contemnor into compliance. See 18 U.S.C. § 401; Hutto v. Finney, 437 U.S. 678 (1978); Penfield Co. of Calif. v. SEC, 330 U.S. 585 (1947). Significantly, the court is not limited to a specific term of confinement, and can incarcerate a defendant for an indefinite period until he complies with the Court's order. See Intn'l Union v. Bagwell, 512 U.S. at 828 (Supreme Court clearly indicated that there is no temporal limitation on the amount of time that a contemnor can be confined for civil contempt when it is undisputed that the contemnor has the ability to comply with the underlying order); United States v. Harris, 582 F.3d at 516-17 (court rejected defendant's request for release based on his claim that his coercive contempt conviction became "puntative" in nature – and thus converted to a criminal contempt – by his continued incarceration of more than 5 years. Quoting Bagwell, 512 F.3d at 828, the Harris court also found that "There is simply no better example of a situation where a contemnor 'carries the keys of his prison in his own pocket.'"); Chadwick v. Janecka, 312 F.3d 597, 608 (3d Cir.2002) (more than 7 year confinement upheld for a defendant who refused to identify the location of marital assets in a divorce action. "The meaning of the statement in Bagwell that a contemnor may be held 'indefinitely until he complies' is perfectly clear. The phrase 'until he complies' sets the point in time when confinement must cease. The term 'indefinitely' describes the length of confinement up to that point, namely, a period 'having no exact limits,' because the end point (the time of compliance) cannot be foretold. Mr. Chadwick's contrary interpretation—that 'indefinitely until

he complies' means 'indefinitely until he complies or it becomes apparent that he is never going to comply'—is insupportable.)

13. In conclusion, the government requests that the Court issue an order compelling Francis Rawls to provide forthwith unencrypted versions of the previously seized devices, as outlined in the Court's order dated August 3, 2015, and to certify facts to the District Court constituting civil contempt pursuant to 28 U.S.C. § 636(e)(6)(B), and to issue an Order to Show Cause why Francis Rawls should not be held in civil contempt for failure to comply with the Court's Order. The government intends to call witnesses at the hearing on this Motion scheduled for September 10, 2015. The government requests that this Motion be filed under seal.

    Respectfully submitted,

    ZANE DAVID MEMEGER
    United States Attorney


    *s/ Michelle Rotella*
    MICHELLE ROTELLA
    Assistant United States Attorney

Dated: <u>September 8, 2015.</u>

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for an Order to Show Cause was served by email and e-filing on the following defense counsel:

>Perry DeMarco, Jr., Esquire
>perrydemarcojr@gmail.com

>s/ Michelle Rotella
>MICHELLE ROTELLA
>Assistant United States Attorney

Dated: September 8, 2015.