UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3205

_____

UNITED STATES OF AMERICA

v.

APPLE MACPRO COMPUTER, APPLE MAC MINI COMPUTER, APPLE
IPHONE 6 PLUS CELLULAR TELEPHONE, WESTERN DIGITAL MY BOOK
FOR MAC EXTERNAL HARD DRIVE, WESTERN DIGITAL MY BOOK
VELOCIRAPTOR DUO EXTERNAL HARD DRIVE

**\*FRANCIS RAWLS,**
Appellant

**\*(Pursuant to FRAP 12(a))**

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-15-mj-00850-01)
District Judge:  Honorable Cynthia M. Rufe

_____

Argued on March 15, 2019

Before:  MCKEE, ROTH and FUENTES, <u>Circuit Judges</u>

_____

**JUDGMENT**

_____

This case came to be heard on the record from the United States District Court for

the Eastern District of Pennsylvania and was argued on March 15, 2019.

On consideration whereof,

**IT IS ORDERED AND ADJUDGED** by this Court that the judgment of the District Court entered September 6, 2017 is hereby **REVERSED** and the matter is remanded to the District Court with instruction to order the immediate release of Appellant. The Clerk is directed to issue the mandate forthwith.

All of the above in accordance with the Opinion of this Court.

**ATTEST:**

s/ Patricia S. Dodszuweit
Clerk

Dated: February 6, 2020

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-3205

———————

UNITED STATES OF AMERICA

v.

APPLE MACPRO COMPUTER, APPLE MAC MINI
COMPUTER, APPLE
IPHONE 6 PLUS CELLULAR TELEPHONE, WESTERN
DIGITAL MY BOOK
FOR MAC EXTERNAL HARD DRIVE, WESTERN
DIGITAL MY BOOK
VELOCIRAPTOR DUO EXTERNAL HARD DRIVE

**\*FRANCIS RAWLS**,
Appellant

**\***(Pursuant to FRAP 12(a))

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-mj-00850-01)
District Judge: Honorable Cynthia M. Rufe

———————

Argued on March 15, 2019

Before: MCKEE, ROTH and FUENTES, <u>Circuit Judges</u>

(Opinion filed: February 6, 2020)

Keith M. Donoghue          (ARGUED)
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
              Counsel for Appellant

Robert A. Zauzmer          (ARGUED)
Emily McKillip
Michelle Rotella
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
              Counsel for Appellee

———————

OPINION

———————

FUENTES, <u>Circuit Judge</u>

In this case, we are asked to determine whether appellant, Francis Rawls, should be released from confinement for civil contempt.   On September 30, 2015, Rawls was

incarcerated for civil contempt after he failed to comply with a court order that he produce several of his seized devices in a fully unencrypted state. Since that day, more than four years ago, Rawls has been held in federal custody. Rawls seeks release arguing that 28 U.S.C. § 1826 limits his maximum permissible confinement for civil contempt to 18 months.

Because we conclude § 1826 applies to Rawls, we will reverse the order of the District Court and order Rawls' release.

## I

The circumstances surrounding Rawls' present confinement for civil contempt began with an investigation into Rawls' access to child pornography. As a part of that investigation, the Delaware County Criminal Investigations Unit executed a search warrant at Rawls' residence, yielding an Apple iPhone 5S, an Apple iPhone 6 Plus, and an Apple Mac Pro Computer (the "Mac Pro") with two attached Western Digital External Hard Drives, all of which were protected with encryption software.[1]

Agents from the Department of Homeland Security then obtained a federal search warrant to examine the seized devices. Rawls voluntarily provided the password for the Apple iPhone 5S but did not provide the passwords to decrypt the Mac Pro or the external hard drives. Ultimately, forensic

---

[1] Encryption technology transforms plain, understandable information into unreadable letters, numbers, or symbols using a fixed formula or process. Only those who possess a corresponding "key" can return the information into its original form, *i.e.* decrypt that information.

3

analysts discovered the password to decrypt the Mac Pro but could not determine the passwords to decrypt the external hard drives.  Forensic examination of the Mac Pro revealed (1) an image of a pubescent girl in a sexually provocative position, (2) logs showing that the Mac Pro had been used to visit websites with titles common in child exploitation, and (3) that Rawls had downloaded thousands of files known to be child pornography.  Those files, however, were not on the Mac Pro, but instead were stored on the encrypted external hard drives. In the course of their investigation, officers interviewed Rawls' sister who stated that Rawls had shown her hundreds of images of child pornography on the encrypted external hard drives, which included videos of children who were nude and engaged in sex acts with other children.  But, without a password to decrypt the hard drives, agents could not access the files themselves.

In August 2015, a Magistrate Judge ordered Rawls to produce all encrypted devices, including his two attached external hard drives, in a fully unencrypted state, pursuant to the All Writs Act (the "Decryption Order").  Rawls did not appeal the Decryption Order.  Instead, he filed a motion to quash the Government's application to compel decryption, arguing that his act of decrypting the devices would violate his Fifth Amendment privilege against self-incrimination.

Eventually, Rawls' motion to quash was denied and Rawls was directed to fully comply with the Decryption Order. The Magistrate Judge acknowledged Rawls' Fifth Amendment objection, but held that, because the Government possessed his devices and knew that their contents included child pornography, the act of decrypting the devices would not be

testimonial for purposes of the Fifth Amendment privilege against self-incrimination.

Approximately one week after the denial of Rawls' motion to quash, Rawls and his counsel appeared at the Delaware County Police Department for the forensic examination of his devices. Rawls produced the Apple iPhone 6 Plus in a fully unencrypted state by entering three separate passwords on the device. The phone contained adult pornography, a video of Rawls' four-year-old niece in which she was wearing only her underwear, and approximately twenty photographs which focused on the genitals of Rawls' six-year-old niece. Rawls, however, stated that he could not remember the passwords necessary to decrypt the hard drives and entered several incorrect passwords during the forensic examination.

Following the forensic examination, the Government moved to show cause why Rawls should not be held in contempt for his failure to comply with the Decryption Order. Two hearings were held on the issue in which, "Rawls offered no on-the-record explanation for his present failure to comply."[2] Based on the evidence presented, the District Court found that Rawls remembered the passwords needed to decrypt the hard drives but chose not to reveal them because of the devices' contents. Thus, the District Court granted the Government's motion to hold Rawls in civil contempt, stating "Rawls will be incarcerated indefinitely until he agrees to comply with and actually does comply with the [Decryption Order]."[3] We affirmed the District Court's contempt order

---

[2] App. 26.
[3] App. 27.

5

holding, *inter alia*, that the Magistrate Judge did not err by finding that the Decryption Order did not implicate the Fifth Amendment privileged against self-incrimination.[4]

Rawls then filed a motion for a stay of the contempt order and for release, which is presently at issue. In that motion, Rawls argues that 28 U.S.C. § 1826(a) limits the maximum period of confinement for civil contempt to 18 months. The District Court denied his motion. We now consider Rawls' appeal of that denial.

## II[5]

We have previously recognized that Congress, through 28 U.S.C. § 1826(a), placed a limit on the inherent authority of

---

[4] *United States v. Apple MacPro Computer*, 851 F.3d 238, 241–42 (3d Cir. 2017), *cert. denied sub nom. Doe v. United States*, 138 S. Ct. 1988 (2018).

[5] The Magistrate Judge had jurisdiction to issue the search warrant and Decryption Order pursuant to Rule 41 of the Federal Rules of Criminal Procedure and the All Writs Act. *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The case turns on matters of statutory construction. We exercise plenary review of a District Court's interpretation of statutes. *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998).

courts to hold individuals in civil contempt for their failure to comply with court orders.[6]  In full, §1826(a) states:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
>
> (1) the court proceeding, or
> (2) the term of the grand jury, including extensions,
>
> before which such refusal to comply with the court order occurred, *but in no event shall such confinement exceed eighteen months.*[7]

Critically, in the final sentence of §1826(a), the statute places an 18-month cap on the period of time a court can keep a witness confined for his or her refusal to "comply with an order of the court to testify or provide other information."[8]

---

[6] *In re Grand Jury Investigation*, 600 F.2d 420, 426-27 (3d Cir. 1979).

[7] 28 U.S.C. § 1826(a) (emphasis added).

[8] *Id.*

The question in this case is simply whether § 1826(a)'s 18-month limitation applies to Rawls.  The Government argues that Rawls was not a "witness" participating in any "proceeding before or ancillary to any court or grand jury of the United States" within the meaning of § 1826(a).  We disagree.  Accordingly, we reverse the order of the District Court and order Rawls' release.

Section 1826(a)'s 18-month limitation applies to Rawls' present confinement because (A) Rawls is a witness for the purposes of § 1826(a), (B) the proceedings to enforce the search warrant fall within the statute's broad description of any "proceeding before or ancillary to any court or grand jury of the United States," (C) the Decryption Order is "an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material," and (D) we read § 1826(a) to apply to the detention of *any* material witness, even if that person is also a suspect in connection with other offenses.

## A

First, Rawls is a witness within the meaning of § 1826(a) both because he is being asked to provide testimonial information and because the statute reaches even non-testimonial acts of production.

A witness is, at the very least, "[s]omeone who gives testimony."  *Witness*, Black's Law Dictionary (11th ed. 2019), and the Supreme Court has recognized that compliance with

requests for evidence can constitute testimony.[9]  Notably, the testimonial value of production is not necessarily tied to the content of the evidence itself.  "[B]y producing documents, one acknowledges that the documents exist, admits that the documents are in one's custody, and concedes that the documents are those that the subpoena requests."[10]  As is pertinent to this case, in producing the passwords needed to decrypt the external hard drives, Rawls would be acknowledging that the hard drives were in his control and that he was capable of accessing them—an act with testimonial value.[11]

Moreover, as several of our sister circuits have held, a person may be a "witness" under § 1826(a) even when the

---

[9] *Doe v. United States*, 487 U.S. 201, 208–10 (1988).

[10] *United States v. Chabot*, 793 F.3d 338, 342 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 559 (2015).

[11] In concluding that decryption is "testimonial," we do not question our prior holding that Rawls could not claim the Fifth Amendment privilege in response to the decryption orders. *Apple MacPro Computer*, 851 F.3d at 248.  That holding turned not on whether decryption would be testimonial—it would, *see United States v. Hubbell*, 530 U.S. 27, 36 (2000) ("[T]he act of producing documents in response to a subpoena may have a compelled testimonial aspect.")—but on whether it would add "to the information already obtained by the Government."  Because, in Rawls' case, it would not have provided any such additional information, the exception to the Fifth Amendment privilege recognized in *Fisher v. United States*, 425 U.S. 391 (1976), for testimonial acts of production where the Government already knows of both the documents' "existence and possession or control," *id.* at 412, applied.

evidence he refuses to produce is not considered "testimonial" for purposes of the Fifth Amendment. *See In re Grand Jury Proceedings*, 541 F.2d 464, 465 (5th Cir. 1976) (applying § 1826(a)'s limitation on confinement to a witness who refused to provide handwriting exemplars); *United States v. Mitchell*, 556 F.2d 371, 384 (6th Cir. 1977) (applying § 1826(a)'s limitation on confinement to criminal defendants who refused to provide voice exemplars); *In re Grand Jury Proceedings*, 873 F.2d 238, 239 (9th Cir. 1989) (applying § 1826(a) to a refusal to provide bank records); *In re Pantojas*, 628 F.2d 701, 702 (1st Cir. 1980) (applying § 1826(a) to a refusal to stand in a line up).

We have signaled our agreement by affirming the confinement of a grand jury witness under § 1826(a) for refusing to provide handwriting exemplars.[12]   Although we concluded, based on Supreme Court precedent,[13] that the provision of exemplars was not "testimonial" for purposes of the Fifth Amendment, we did not question the District Court's authority to confine the contemnor pursuant to § 1826(a) and repeatedly deemed him a "witness."[14]   So too here, then, Rawls' decryption of his devices—even assuming it were not testimonial—would make him a "witness" within the ambit of § 1826(a). *See Mitchell*, 556 F.2d at 384 (explaining that "the failure of the defendants to obey the court order to give voice exemplars" fell within § 1826's ambit "even though the non-

---

[12] *In re Special Fed. Grand Jury*, 809 F.2d 1023, 1025 (3d Cir. 1987).

[13] *Gilbert v. California*, 388 U.S. 263, 266–67 (1967).

[14] *See e.g.*, *In re Special Fed. Grand Jury,* 809 F.2d at 1024–25, 1027.

testimonial nature of the evidence makes Fifth Amendment protections inapplicable").

In arguing that Rawls was not a witness within the meaning of § 1826(a), the Government relies heavily on the reasoning of *United States v. Harris*.[15]  This reliance is misplaced.  In *Harris*, the Court found that the contemnor, Harris, was not a "recalcitrant witness."[16]  Although the Court did not elaborate as to why Harris was not a witness, the facts of the case made the conclusion clear.  In that case, Harris was not held for a failure to provide information of any sort. Instead, he was held in civil contempt for his refusal to stop "affirmatively . . . sending out" "bogus liens and judgments" against the judges and prosecutors involved in the underlying case.[17]  As a result, the *Harris* Court did not substantively engage with the question of how a witness is defined under § 1826(a).

There is a significant difference between a contempt confinement for failure to provide information and confinement for failure to stop actively harassing court personnel.  Unlike the contemnor in *Harris*, Rawls is being asked to provide information in a proceeding and is therefore a witness under § 1826(a).

B

Next, the proceedings to enforce the search warrant qualify as "court proceeding[s]" within the meaning of

---

[15] 582 F.3d 512 (3d Cir. 2009).

[16] *Id.* at 517.

[17] *Id.* at 513–14.

§ 1826(a).  A proceeding may be defined more narrowly as the "regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" or more broadly as the "business conducted by a court or other official body."[18]  As Rawls argues, proceedings to obtain and enforce a search warrant are marked by the procedural formalities that define other court proceedings: a basis for jurisdiction, limitations on venue, a standard of proof, and a "neutral and detached magistrate."[19]  Nothing in the text of § 1826(a) lends support to the argument that a "court proceeding" is limited to trials.

Further, at least two circuit courts have held that § 1826(a) is applicable to proceedings outside of grand jury proceedings or a criminal trial.  First, in *In re Martin-Trigona*, the Second Circuit applied § 1826(a) to a bankruptcy proceeding.[20]  In that opinion, the Second Circuit concluded that the statute's use of "any" where it states "[w]henever a witness in *any* proceeding before or ancillary to *any* court . . . ," indicates that Congress intended § 1826(a) to apply to bankruptcy proceedings.[21]  Second, in *In re Application of President's Comm'n on Organized Crime*, the Eleventh Circuit concluded that § 1826(a) was applicable to a contemnor's refusal to testify before the President's Commission on Organized Crime (the "Commission").[22]  The Eleventh Circuit concluded that because the Commission "was obliged to secure

---

[18] Proceeding, Black's Law Dictionary (10th ed. 2014).

[19] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016).

[20] 732 F.2d 170, 174 (2d Cir. 1984).

[21] *Id.*

[22] 763 F.2d 1191, 1201 (11th Cir. 1985).

[the witness's] testimony by writ of habeas corpus, and by enforcement of an immunity order, and because [the witness] took legal action to protect himself from the Commission's subpoena, the proceedings before the Commission became 'ancillary' to proceedings before a court."[23]   Further, the Eleventh Circuit reasoned, "the documented intent of Congress" was for § 1826 to apply to "a range of court-related proceedings, including depositions."[24]

Here, the proceeding to obtain and enforce the search warrant required an order to be issued by the District Court and became adversarial when Rawls sought to quash the Decryption Order.   Because courts have interpreted "any proceeding before or ancillary to any court or grand jury" broadly, we conclude that the proceedings to obtain and enforce the search warrant in this case fall within the language of § 1826(a).

## C

Additionally, the Decryption Order is an order to "provide other information" under § 1826(a).  Not only is the language used by Congress in this provision broad, but the legislative history of § 1826(a) shows that "other information" was used "in contradistinction to oral testimony" and "would include, for example, electronically stored information or computer tapes."[25]   The legislative history reveals that, "[i]ts

---

[23] *Id.*

[24] *Id.*

[25] *Palmer v. United States*, 530 F.2d 787, 789 n.3 (8th Cir. 1976) (quoting H.R. Rep. No. 91-1549, *reprinted in* 1970 U.S.C.C.A.N. 4008, 4017, 4022).

scope is intended to be comprehensive, including all information given as testimony, but not orally."[26]   The production of the hard drives falls within that scope.

## D

Finally, we conclude that § 1826(a) applies to a person in his or her capacity as a material witness even if that person is also a suspect in connection with other offenses.  Although Rawls maintains a dual identity—Rawls is a witness for purposes of contempt, while a suspect for child pornography offenses—we find that § 1826(a) caps Rawls detention for committing civil contempt in his capacity as a material witness at 18 months.[27]

If the Government seeks to impose any additional deprivation of liberty for Rawls' status as a suspect in the alleged child pornography offenses the Government must charge Rawls with those offenses,[28] provide Rawls with a trial by a jury of his peers, prove those charges beyond a reasonable doubt , and sentence Rawls in accordance with due process.  To hold that § 1826(a) applies only to witnesses who are not also suspected of crimes would do an end run around these

---

[26] *Id.*

[27] At this point Rawls has already been in confinement for more than four years without being convicted of, or indicted with, a crime.

[28] As detailed *supra* in Section II, even without decrypting the hard drives, the Government has already collected a substantial amount of evidence with which it could prosecute Rawls for child pornography offenses under 18 U.S.C. §§ 2251 and 2252.

fundamental rights and relieve the Government of its burden to prove a defendant guilty before imposing punishment.[29]

### III

For the above reasons, we hold that § 1826 applies to Rawls because he is a "witness in [a] proceeding before or ancillary to any court or grand jury of the United States" presently confined for his refusal to "comply with an order of the court to testify or provide other information": accordingly, § 1826 limits the duration of his confinement to 18 months.[30] We will, therefore, reverse the order of the District Court and order Rawls' release.

---

[29] *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 425 (3d Cir. 1979) ("Although the due process test is easily formulated, the point at which coercive imprisonment actually ceases to be coercive and essentially becomes punitive is not readily discernible.").

[30] 28 U.S.C. § 1826(a).

McKee, *Circuit Judge*, Concurring.

I join Judge Fuentes' opinion in its entirety. For reasons he explains, I completely agree that a criminal defendant cannot be deprived of statutory and constitutional protections afforded those accused of crimes merely because s/he also happens to be a material witness. Limitations placed upon the Government's ability to incarcerate a criminal suspect do not disappear into the ethers merely because that same person is also subject to confinement as a material witness.

However, I write separately because I do not think that the Government's conduct in prosecuting Rawls should escape additional comment.

I realize, of course, that I do not know all of the circumstances surrounding this case and there may be some hidden justification for the Government's tactics here. However, based on the evidence in the record (as briefly summarized by Judge Fuentes),[1] it appears that the Government is insisting that Rawls' incarceration for contempt be continued even though it already possesses sufficient evidence of Rawls' possession and production of child pornography to obtain a conviction under various subsections of 18 U.S.C. §§ 2251 and 2252. In fact, Rawls' own sister's testimony regarding Rawls' possession of a video of his two nieces, aged four and six, may very well be sufficient to convict him of possession and/or production of child pornography involving a minor in his custody or control.

Conviction for these offenses could expose him to a mandatory minimum sentence of 15 years imprisonment and a maximum term of imprisonment of thirty years–assuming this is his first such offense.[2] If he has prior convictions for child pornography, he could be exposed to a maximum sentence of life imprisonment, depending on the number of convictions and the acts involved in any prior convictions.[3] His exposure is exacerbated by the well-known fact that the sentences suggested for such offenses under the Sentencing Guidelines are quite severe.

I therefore cannot fathom why the Government is so insistent upon further gilding the lily with the evidence that may well be in the encrypted files on the disputed hard drives and demanding his

---

[1] *See* Majority Op. at 3 and 4.
[2] 18 U.S.C. § 2251(e).
[3] *Id.*

1

imprisonment until he "coughs up" that evidence.  There may well be some justification for insisting that Rawls be imprisoned on contempt charges before his all but certain prosecution for child pornography and the very severe sentences he would be exposed to if convicted for the latter offenses, but such justification for the Government's conduct here certainly escapes me.

  If Rawls is eventually convicted for charges arising from the files involved in this case, absent some reasonable argument to the contrary, I would hope that the sentencing judge would take his rather substantial incarceration for contempt into account when deciding upon an appropriate sentence, and I think it worth adding this brief concurring opinion to underscore that concern.

*United States of America v. Apple MacPro Computer, et al*

No. 17-3205

_____

ROTH, <u>Circuit Judge</u>, dissenting.

Because I do not agree with the reasoning of the majority or of the concurrence, I respectfully dissent. My dissent is based on my belief that 28 U.S.C. § 1826(a) should be held to cover the situations expressly stated therein: "any proceeding before or ancillary to any court or grand jury of the United States." In this case there is no such proceeding – at least, not so far. For that reason, I believe that we should not stretch a statute to cover a situation that is not included in the language of the statute.

Because the investigation here is a preliminary one – there has not yet been an indictment nor have criminal proceedings begun before the District Court or before any court, section 1826(a) does not apply and its eighteen-month limitation on confinement does not apply. Moreover, the cases cited by the majority do not apply to the present situation.[1]

_____

[1] *See Doe v. United States*, 487 U.S. 201 (1988) (involving a proceeding before a grand jury); *In re Grand Jury Proceedings*, 873 F.2d 238 (9th Cir. 1989) (same); *In re Pantojas*, 628 F.2d 701 (1st Cir. 1980) (same); *United States v. Mitchell*, 556 F.2d 371 (6th Cir. 1977) (involving indicted criminal defendants who refuse to provide voice exemplars)

To briefly recap the pertinent facts, during an investigation into Rawls' access to child pornography over the internet, the Delaware County, Pennsylvania, Criminal Investigations Unit executed a valid search warrant at Rawls' residence.  The search yielded, among other things, an Apple MacPro computer, an Apple iPhone 6 Plus, and two Western Digital external hard drives.   All of the devices were protected with encryption software which rendered them unreadable without the benefit of corresponding passwords.

Agents from the Department of Homeland Security then applied for, and obtained, a federal search warrant to examine the seized devices.   During their investigation, government analysts discovered the password to decrypt the MacPro computer.   Their examination of the computer's contents revealed (1) an image of a pubescent girl in a sexually provocative position, (2) logs showing that the computer had been used to visit sites with titles common in child exploitation, and (3) evidence that the computer had been used to download thousands of files known to be child pornography.   However, further forensic analysis revealed that the child pornography files had been stored not on the computer but on the two Western Digital external hard drives. As part of the investigation, police officers also interviewed Rawls's sister, who told the officers that Rawls had shown her hundreds of images of child pornography on the external hard drives, including videos of children engaged in sex acts with other children.

The government then applied for a Decryption Order, pursuant to the All Writs Act,[2] requiring Rawls to produce all

[2] 28 U.S.C. § 1651.

encrypted devices, including the two Western Digital hard drives, in a fully unencrypted state. After the Magistrate Judge issued the Decryption Order, Rawls moved to quash it on Fifth Amendment grounds. The Magistrate Judge denied the motion, finding that the Decryption Order did not require any testimonial communication of the kind protected by the Fifth Amendment.

Rawls and his counsel thereafter appeared at the Delaware County Police Department, where Rawls partially complied with the Decryption Order by providing the password for the iPhone 6 Plus. The iPhone contained a video of Rawls's four-year-old niece, wearing only underwear, and approximately twenty photographs focusing on the genitals of Rawls's six-year-old niece. However, while at the Police Department, Rawls claimed that he could not remember the passwords necessary to decrypt the seized external hard drives. He did enter several incorrect passwords.

The government moved to show cause why Rawls should not be held in contempt for his failure to fully comply with the Decryption Order. The Magistrate Judge held a hearing and found that Rawls remembered the passwords necessary to decrypt the external hard drives but chose not to reveal them. After a second hearing, the District Court granted the government's motion to hold Rawls in civil contempt and ordered his incarceration "until such time that he fully complies . . . by permitting access to the two external hard drives . . . in a fully unencrypted state."[3] The District Court explained that while Rawls' defense was based on

---

[3] App. 21.

memory loss, "Rawls did not testify or call any witnesses [and] he did not offer any documentary or physical evidence into the record . . .. Crucially, Rawls offered no on-the-record explanation for his present failure to comply."[4]

In a prior appeal of the contempt order, Rawls argued that (1) the District Court lacked subject matter jurisdiction to issue the Decryption Order under the All Writs Act because the government should have sought Rawls's compliance by means of grand jury procedure, and (2) the Decryption Order violated his Fifth Amendment privilege against self-incrimination. We affirmed the rulings of the District Court and held that (1) the All Writs Act enabled the Magistrate Judge to issue an order that sought to effectuate and prevent the frustration of the federal search warrant, and (2) the Magistrate Judge did not err by finding that the Decryption Order did not implicate the Fifth Amendment privilege against self-incrimination because the information that would be conveyed via Rawls' compliance—that he knows the requisite passwords—was a foregone conclusion.[5]

---

[4] App. 26.

[5] *United States v. Apple MacPro Computer*, 851 F.3d 238, 246, 248 n.7 (3d Cir. 2017); *see id.* at 247 (Under the "foregone conclusion" rule, "the Fifth Amendment does not protect an act of production when any potentially testimonial component of the act of production—such as the existence, custody, and authenticity of evidence—is a 'foregone conclusion' that 'adds little or nothing to the sum total of the Government's information.'" (citing *Fisher v. United States*, 425 U.S. 391, 411 (1976))).

Rawls petitioned the Supreme Court for a writ of certiorari, which was denied.[6]   While the petition was pending, Rawls filed a motion for stay of the contempt order and for release.   In the motion, he invoked 28 U.S.C. § 1826(a), contending that it limits the maximum period of his confinement for civil contempt to eighteen months.

The District Court convened another hearing, during which Rawls refused to state whether he was willing or able to comply with the decryption order.  The District Court then denied his motion.  Rawls appealed.

The focus of this appeal is 28 U.S.C. § 1826(a), which

states:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is

---

[6] *See Doe v. United States*, 138 S. Ct. 1988 (2018).

5

willing to give such testimony or provide such information.   No period of such confinement shall exceed the life of –

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.[7]

The government contends that § 1826 imposes no limit on the period for which Rawls may be confined for civil contempt because, among other reasons, he is not a "witness in any proceeding before or ancillary to any court or grand jury of the United States."   In any event, the government contends that we should not lightly assume that Congress intended to limit the scope of courts' inherent power to order the confinement of civil contemnors.   Rawls, on the other hand, asserts that § 1826's eighteen-month confinement limitation applies to him and therefore that he must be released.   He urges us to consider the meaning of the statute in light of its legislative history, structure, and purpose.   For the reasons discussed below, I disagree with the majority and I agree with the government that § 1826 does not apply to Rawls because he is not a "witness in any proceeding before or ancillary to any court or grand jury of the United States."[8]

---

[7] 28 U.S.C. § 1826(a).
[8] 28 U.S.C. § 1826(a).

Courts derive their contempt powers from the Constitution's vesting "the judicial Power of the United States" in the federal courts.[9]  Indeed, "it is firmly established that '[t]he power to punish for contempts is inherent in all courts."[10]  While "the exercise of the inherent power of lower federal courts can be limited by statute and rule," courts should not "'lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power."[11]  In the absence of a clear indication that Congress intended to restrict courts' inherent power, we must "resolve the ambiguities of [a statute] in favor of that interpretation which affords a full opportunity for . . . courts to [act] in accordance with their traditional practices."[12]

Here, there is even greater need for Congress to clearly indicate its intent to restrict courts' inherent power, as Congress has explicitly endorsed the courts' use of coercive civil confinement for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."[13]  Moreover, Congress has bolstered courts' inherent contempt powers via the All Writs Act, which enables courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions."[14]

---

[9] U.S. Const. art. III.

[10] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

[11] *Id.* at 47 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)).

[12] *Hecht Co. v. Bowles*, 321 U.S. 321, 330 (1944).

[13] 18 U.S.C. § 401(3).

[14] 28 U.S.C. § 1651(a).

Turning to the specific provisions of § 1826, it is not clear that Congress intended the provisions of that statute to limit the power of courts to hold individuals such as Rawls, the recipient of a valid search warrant, in civil contempt. In fact, the opposite conclusion can be drawn. The statute refers to "a witness in any proceeding before or ancillary to any court or grand jury of the United States." Rawls is not a "witness," as his contempt relates only to the Decryption Order requiring that he comply with the government's search warrant by producing his devices in a fully unencrypted state.

This case is akin to our precedent in *United States v. Harris*.[15] In that case, the district court ordered Harris, during pre-trial criminal proceedings, to stop filing bogus liens and judgments against judges and prosecutors. Harris refused to comply.[16] As a result, the district court held him in contempt and ordered him to be incarcerated until he agreed to cease making bogus filings.[17] Despite failing to comply with the court's order, Harris argued after five years in prison that the district court's contempt order should be vacated because it violated due process.[18] In making this argument, Harris relied on the 18-month limitation in § 1826.[19] We disagreed with Harris, finding that he "is not, and was not, a recalcitrant witness" to whom § 1826 applied.[20] The context of that holding makes clear that we did not consider Harris a "witness" because the conduct that led to his incarceration for

---

[15] 582 F.3d 512 (3d Cir. 2009).
[16] *Id.* at 514.
[17] *Id.*
[18] *Id.* at 516.
[19] *Id.*
[20] *Id.* at 517.

contempt was not part of the criminal proceeding for which he was charged and sentenced.[21]

Like Harris, Rawls's contempt cannot be traced to his status as a "witness;" he is merely the recipient of a lawful search warrant with which he has failed to comply. Rawls's interpretation of the term "witness in any proceeding before or ancillary to any court or grand jury of the United States," would render superfluous language appearing later in § 1826(a)(1) and (2), which limits the period of confinement for civil contemnors to the life of "the court proceeding, or . . . the term of the grand jury, in including extensions, before which such refusal to comply with the court order occurred." When a court proceeding ends, a contemnor can no longer be "said to carry . . . 'the keys of the prison in his own pocket.'" In this situation, there is no ongoing trial or grand jury, and Rawls's sole obligation is to produce his hard drives in an unencrypted format; Rawls carries the metaphorical key to his own release.

Rawls' attempts to distinguish *Harris* rely on the fact that Rawls has always maintained he cannot remember the passwords necessary to decrypt the external hard drives. The Magistrate Judge, however, found that the government has adequately proved Rawls's ability to remember his

---

[21] Rawls seeks to distinguish *Harris* on the ground that the contempt in *Harris* was not predicated upon a failure to provide information. But nowhere in *Harris* did we suggest that § 1826 was inapplicable by virtue of the fact that Harris was not required to provide information; instead, we clearly stated the basis for our conclusion when we wrote that Harris was not a "recalcitrant witness."

9

passwords.  Rawls chose not to challenge that finding in this appeal.  Moreover, if Rawls should contend that he has forgotten his passwords, he is free to file a motion with the District Court seeking his release on the ground that his confinement has ceased to be coercive and has therefore become punitive.[22]

Rawls raises several other arguments regarding the purpose, structure, and legislative history of § 1826, but none merit reversal.  I will address each in turn.

Rawls urges us to construe the term "witness" broadly in light of the statute's purpose.  But he cannot point to any clear indication in the statute's "statement of findings and purpose" that Congress intended § 1826, or the Omnibus Crime Control Act of 1970 (the "Act")—of which it constitutes a small part—to apply to those who fail to comply with lawful search warrants.[23]  Instead, Rawls cites to general statements that the Act was intended to remedy defects in "the evidence-gathering process."[24]  Although Rawls only quotes this short phrase, it is actually part of a longer congressional finding that "organized crime continues to grow because of *defects in the evidence-gathering process of the law inhibiting the development of the legally admissible*

---

[22] *See, e.g.*, *In re Grand Jury Investigation*, 600 F.2d 420, 425 (3d Cir. 1979) ("[A]t some point the confinement ceases to be coercive and becomes punitive, thereby raising due process concerns" justifying the release of the contemnor in the absence of criminal contempt proceedings.)

[23] *See generally* Pub. L. No. 91-452, tit. III, § 301, 84 Stat. 922, 923 (1970).

[24] 84 Stat. at 923.

*evidence* necessary to bring criminal and other sanctions or remedies to bear . . ..”[25]  If anything, the statement read as a whole suggests that the Act was concerned with ensuring that the government has adequate tools for gathering evidence, rather than restricting the scope of such tools.

As for the statute's structure, Rawls notes that the phrase "testify or provide other information, including any book, paper, document, record, recording or other material" in § 1826(a) replicated the exact language used elsewhere in the immunity section of the Act.[26]  But the House Report makes clear, in reference to that exact language in the immunity section, that although it was meant "to be comprehensive," its scope simply included "all information given as testimony, but not orally."  As I have already pointed out, the District Court's order requiring Rawls to provide his hard drives in unencrypted format does not require his testimony.[27]  And the "testify or provide other information" language used later in § 1826 does not convert the earlier

---

[25] *Id.* (emphasis added).

[26] *Compare* 28 U.S.C. § 1826(a), *with* 84 Stat. at 927.

[27] *Apple MacPro*, 851 F.3d at 248.

term, "witness," into something broader than its plain meaning.[28]

Finally, Rawls argues that if § 1826 does not apply to him, there is a paradox -- indefinite confinement may become permissible so long as no charges are brought. This argument fails to account for the procedural posture of this case. The government has chosen to pursue further investigatory steps before deciding whether to bring charges against Rawls. This is not a decision we believe Congress intended to discourage via § 1826.[29] The government is free to seek lawful search warrants and to obtain the fruits of such searches before convening a grand jury or pursuing an indictment.

III

---

[28] Rawls also asks that we interpret § 1826 broadly in light of language from the Act's Senate Report, which states that the measure was enacted to define "the power of the courts to deal with *witnesses* who are unlawfully withholding information necessary to move forward an investigation." Senate Report at 57 (emphasis added). However, the Senate's use of the term "witnesses" suggests that, as discussed *supra*, the Senate did not foresee the application of § 1826 to recipients of lawful search warrants.

[29] *See, e.g.*, 84 Stat. at 923 ("Statement of Findings and Purpose") ("It is the purpose of this Act to . . . strengthen[] the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies . . ..").

For the above reasons, I would hold that § 1826 does not apply to Rawls because he is not a "witness in any proceeding before or ancillary to any court or grand jury of the United States."  I would affirm the contempt order of the District Court.